**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEITH CLEMENS, individually and
on behalf of all others similarly
situated,

      *Plaintiff-Appellant,*

      v.

DAIMLERCHRYSLER CORPORATION,

      *Defendant-Appellee.*

No. 06-56410

D.C. No.
CV-05-08484-JFW

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
April 11, 2008—Pasadena, California

Filed June 19, 2008
Amended July 24, 2008

Before: William C. Canby, Jr. and Jay S. Bybee,
Circuit Judges, and Roger L. Hunt,* District Judge.

Opinion by Judge Canby

---

*The Honorable Roger L. Hunt, Chief United States District Judge for
the District of Nevada, sitting by designation.

9123

**COUNSEL**

John F. Edgar, Kansas City, Missouri, for the plaintiff-appellant.

Frederick D. Baker, Sedgwick, Detert, Moran & Arnold, LLP, San Francisco, California, for the defendant-appellee.

## ORDER

This court's mandate of July 13, 2008, is RECALLED.

The opinion of this court filed on June 19, 2008, slip op. at 7095, is amended as follows:

1.   At slip op. at 7103, amend the second sentence of the first paragraph of Subsection B (beginning "In California, a plaintiff . . ."), so that it states:

> Under California Commercial Code section 2314, the implied warranty provision invoked by Clemens, a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant.

2.   At slip op. at 7104, amend the second-to-last textual sentence of Subsection B so that it states:

> Nonetheless, California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it.

The amended opinion, incorporating these changes, follows.

The mandate shall issue forthwith.

---

## OPINION

CANBY, Circuit Judge:

Keith Clemens[1] brought this class action against Daimler-

---

[1] The parties have stipulated to the dismissal of claims by another named plaintiff, James Beirne.

Chrysler Corporation alleging that DaimlerChrysler breached express and implied warranties and committed fraud in the sale of Dodge Neon cars containing defective head gaskets from 1995 to 1998. The district court granted DaimlerChrysler's Rule 12(b)(6) motion to dismiss the warranty claims. It also granted DaimlerChrysler's motion for summary judgment on the fraud claims, holding that one claim was barred by the statute of limitations and the other failed on the merits. Clemens appealed all of these rulings, and we affirm.

## FACTS

Clemens bought a new 1998 Dodge Neon from an independent Dodge dealership. After driving the car for approximately 50,000 miles, Clemens noticed that the engine had begun to leak oil. The oil leak worsened, and when the odometer reached 60,000 miles, Clemens performed some research on the internet and learned that head gasket failure (and resulting oil leaks) were a common problem on this model automobile.

In September 2002, a Chrysler-authorized service center referred Clemens to a customer service hotline, which denied his request for a repair discount. Rather than pay for the repair, Clemens replaced the head gasket himself at a cost of $70, videotaping the repair process. He claims that, had he known the head gasket was likely to fail, he would not have purchased a Dodge Neon.

DaimlerChrysler provided the following express warranty with the automobile:

> The Basic Warranty covers the cost of all parts and labor needed to repair any defective item on your vehicle that was supplied by Chrysler—that is, defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception is tires. You pay nothing for these repairs.

> These warranty repairs or adjustments—including all parts and labor connected with them—will be made by your dealer at no charge, using new or remanufactured parts.

This warranty was expressly limited in duration to 36 months from the date of purchase, or 36,000 miles on the odometer, whichever occurred first.

Clemens filed his class action in December 2005, alleging that DaimlerChrysler breached express and implied warranties under state law and under the Magnuson-Moss Act, 15 U.S.C. § 2310. Clemens also alleged that DaimlerChrysler had fraudulently failed to disclose the head gasket problem under California's common law fraud statute, Cal. Civ. Code §§ 1709-1710,[2] and California's Unfair Competition Law (UCL) statute, Cal. Bus. & Prof. Code § 17200.

The district court dismissed the express warranty claim because the head gasket failure did not occur until after the express warranty period had expired. The implied warranty claim was dismissed for lack of contractual privity between DaimlerChrysler and Clemens. Derivative claims under the Magnuson-Moss Act were dismissed as well. The district court granted summary judgment on the Civil Code fraud claim because the limitations period had run, no equitable tolling was warranted, and, in the alternative, the facts shown were inadequate to support the claim. For this last reason, summary judgment was also granted on the UCL claim.

## DISCUSSION

We review de novo dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6). *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). To avoid a

---

[2]These provisions codify in part the common law tort of fraud. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 n.5 (1997).

Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). We review a grant of summary judgment de novo. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

# I

We begin with Clemens's claims that DaimlerChrysler breached express and implied warranties. The district court held—and Clemens does not dispute—that the claims under the Magnuson-Moss Act stand or fall with his express and implied warranty claims under state law.[3] Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.

## A. Breach of Express Warranty

The district court properly dismissed Clemens's claim for breach of express warranty because Clemens has alleged no such breach. The head gasket functioned throughout the 36,000 miles or three years for which it was warranted. Clemens attempts to escape this conclusion by arguing that the warranty expressly applies to "any defective item," that the defect allegedly existed before the warranty expired, and that DaimlerChrysler had knowledge of the defect at the time of

---

[3]15 U.S.C. § 2310(d) provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." Clemens alleges a violation of the Act only insofar as DaimlerChrysler may have breached its warranties under state law; there is no allegation that DaimlerChrysler otherwise failed to comply with the Magnuson-Moss Act. Therefore, the federal claims hinge on the state law warranty claims. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (noting that the Magnuson-Moss Act borrows state law causes of action).

sale. Therefore, he claims, the expiration of the warranty is no obstacle.

[1] California has adopted a doctrine from the Second Circuit that forecloses these arguments. "The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006) (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)). *Abraham* rejected the holding of *Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1026 (D.D.C. 1985), which had held that a breach-of-warranty claim for post-warranty component problems could proceed after the warranty period if the defendant knew of the defects at the time of sale. *Abraham*, 795 F.2d at 250. As the *Abraham* court recognized, *Alberti* conflated notions of express and implied warranty and pushed the definition of "defect" to the breaking point.

Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted. Claims regarding other buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty.

[2] Accordingly, the California Court of Appeal has joined the Second Circuit in rejecting the holding of *Alberti* for the "general rule" of *Abraham*. *See Daughtery*, 144 Cal. App. 4th at 831 ("Like the court in *Abraham*, we do not find the reasoning of *Alberti* persuasive and decline to follow it." (internal quotation marks and alterations omitted)). The repairs in this case were made after the warranty period expired. Therefore, we affirm the dismissal of the express warranty claims.

## B.   Breach of Implied Warranty

**[3]** Clemens's implied warranty claim also fails, but for a different reason. Under California Commercial Code section 2314, the implied warranty provision invoked by Clemens, a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant. *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005). A buyer and seller stand in privity if they are in adjoining links of the distribution chain. *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988). Thus, an end consumer such as Clemens who buys from a retailer is not in privity with a manufacturer. *Id.*

Some particularized exceptions to the rule exist. The first arises when the plaintiff relies on written labels or advertisements of a manufacturer. *See Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (Cal. 1954). The other exceptions arise in special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser. *See id.* at 695; *Windham at Carmel Mountain Ranch Ass'n v. Superior Court*, 109 Cal. App. 4th 1162, 1169 (2003); *Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal. App. 4th 357, 369 (1997); *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 608 (1960). Clemens does not claim that any of these exceptions apply directly. Instead, he urges that they are exemplary rather than exhaustive, and that similar equities support an exception for his case.

**[4]** We decline this invitation to create a new exception that would permit Clemens's action to proceed. So doing, we acknowledge that state courts have split on this privity question, *see Rothe v. Maloney Cadillac, Inc.*, 492 N.E.2d 497, 502 (Ill. App. Ct. 1986), *aff'd in part and rev'd in part*, *Rothe v. Maloney Cadillac, Inc.,* 518 N.E.2d 1028 (Ill. 1988) (collecting cases on both sides), and that the requirement may be an archaism in the modern consumer marketplace. *See Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 952-59 (Ind.

2005) (discussing the history of the privity requirement at length and rejecting its application to consumer—manufacturer warranty claims). Nonetheless, California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it. *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975). A lack of vertical privity requires the dismissal of Clemens's implied warranty claims.

## II

We next turn to Clemens's Civil Code and UCL claims. The district court concluded that Clemens's Civil Code fraud claims were time-barred by the three-year statute of limitations set out in California Code of Civil Procedure section 338(d). Clemens argues that the beginning of the limitations period should have been postponed by the discovery rule or that limitations should have been tolled by the filing of a similar action in Illinois. We disagree with both contentions.

### A.   The Discovery Rule

**[5]** In California, the discovery rule postpones accrual of a claim until "the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (Cal. 1999). California applies a special standard in cases of fraudulent concealment, which Clemens claims here. In these cases, the plaintiff must show: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974). "A plaintiff must affirmatively excuse his failure to discover the fraud within three years by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or pre-

sumptive knowledge of facts sufficient to put him on inquiry." *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 129 (1975).

**[6]** Clemens has failed to carry this burden. In his deposition, he testified that prior to three years before the filing of this action, he performed research on the internet and learned that head gasket failure was a "common problem" in Dodge Neon cars. Clemens knew at that time that DaimlerChrysler was offering discounts to replace some head gaskets after the warranty period. His requests for repair discounts after the warranty period expired, along with his efforts to videotape his repair process (apparently in preparation for litigation) both imply a suspicion of wrongdoing, and both occurred more than three years before he filed his action. Clemens was unable to identify any event between that time and the time he contacted his attorneys that affected his thinking about the lawsuit. Under *Bedolla*, the start of the limitations period is postponed only if Clemens has made an affirmative showing that he lacked inquiry notice and subsequently gained such notice less than three years before filing his action. He has not done so. Thus, we conclude that the discovery rule did not prevent the running of limitations to bar Clemens's claim.

## B. The Illinois Action

In 2001, a nationwide class action concerning Dodge Neon head gaskets was filed in Illinois. It is undisputed that Clemens was a member of the nationwide class that the plaintiffs in that case sought to certify. Here, as in the district court, Clemens argues that his claim may proceed under a theory of cross-jurisdictional tolling because he relied upon the Illinois action to vindicate his rights. We agree with the district court that this argument must fail.

**[7]** In some instances, a plaintiff can rely on the filing of a prior class action to vindicate the right in question and toll the statute in the event that the class is not ultimately certified. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554

(1974). A handful of states have applied this rule when a class action is filed in another jurisdiction. *See Ravitch v. Pricewaterhouse*, 793 A.2d 939, 943-44 (Pa. Super. Ct. 2002) (collecting cases going both ways but rejecting tolling); *see also, e.g., Staub v. Eastman Kodak Co.*, 726 A.2d 955, 965-67 (N.J. Super. Ct. App. Div. 1999) (allowing tolling); *Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160, 163 (Ohio 2002) (allowing tolling). The California Supreme Court has not adopted such cross-jurisdictional tolling, however, and few states do. *See Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) (citing state court decision adopting cross-jurisdictional tolling). As the *Maestas* court noted, several federal courts have declined to import the doctrine into state law where it did not previously exist. *See, e.g., Wade v. Danek Med., Inc.*, 182 F.3d 281, 287-88 (4th Cir. 1999) (citing Virginia's lack of interest in furthering the economy of class action procedures in another jurisdiction, the risk that forum-shopping plaintiffs from out of state would swell the dockets of Virginia's courts, and the unwieldy prospect of tying Virginia's statute of limitations to the resolution of claims in other jurisdictions).

**[8]** Accordingly, the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law. The rule of *American Pipe*—which allows tolling within the federal court system in federal question class actions—does not mandate cross-jurisdictional tolling as a matter of state procedure. We therefore conclude that the filing of the Illinois action did not toll the statute, and Clemens's Civil Code fraud claim is barred by the three-year statute of limitations.

## III

**[9]** Finally, we address the district court's grant of summary judgment on the merits of Clemens's UCL claim. The UCL statute allows claims for unfair, unlawful, or fraudulent

business practices. Cal. Bus. & Prof. Code § 17200. On appeal, Clemens contends only that DaimlerChrysler's conduct was fraudulent or unfair within the meaning of the statute. California authority makes clear that both claims are meritless.

## A.  Fraudulent Conduct

[10] Clemens has presented insufficient evidence in support of his claim that DaimlerChrysler fraudulently concealed any head gasket defect in violation of the UCL. Generally, to be actionable under the UCL, a concealed fact must be material in the sense that it is likely to deceive a reasonable consumer. *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 806 (2006). Unlike a common law fraud claim, a UCL fraud claim requires no proof that the plaintiff was actually deceived. *Daugherty*, 144 Cal. App. 4th at 838. Instead, the plaintiff must produce evidence showing "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003). Surveys and expert testimony regarding consumer assumptions and expectations may be offered but are not required; anecdotal evidence may suffice, although "a few isolated examples" of actual deception are insufficient. *Id.* (repudiating federal district court decisions which, like the subsequent case *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005), suggest anecdotal evidence of materiality is always insufficient under a "reasonable consumer" standard).

In the context of post-warranty failure of engine components, California courts have viewed fraudulent concealment actions under this statute with some skepticism, recently affirming a dismissal on materiality grounds for failure to allege that "(1) members of the public had any expectation or made any assumptions that [DaimlerChrysler's] exhaust manifolds would be made from cast iron, as opposed to tubular steel, (2) the public had any expectation or made any assump-

tions regarding the life span of the exhaust manifold of a [DaimlerChrysler] vehicle, or (3) facts showing [DaimlerChrysler] had made any representation of any kind, much less any misrepresentation, regarding its vehicles." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006). In *Daugherty*, the California Court of Appeal applied that materiality test in a case involving facts closely akin to those in the instant case: the engine components at issue were alleged to cause premature oil leaks that could, in turn, cause potentially serious additional engine damage. 144 Cal. App. 4th at 827, 835-36. The court held that where "[t]he only expectation buyers could have had about [a particular] engine was that it would function properly for the length of [the manufacturer]'s express warranty," the public was not likely to be deceived. *Id.* at 838 (dismissing claim under Rule 12(b)(6)).

**[11]** Aside from his bare allegations, Clemens has produced no evidence to suggest that a reasonable consumer would have expected or assumed any particular head gasket lifespan in excess of the warranty period. Moreover, the facts in the record speak to the contrary. Clemens testified in his deposition that at the time of purchase, he never made inquiries about warranties, repair costs, or the lifespan of the engine. His purchasing preferences related to price and on-road performance. He admitted that when he bought the Neon, he had no idea how long he expected to keep it. He continued to drive the car for nine months (about 10,000 miles) after he learned of the oil leak.

**[12]** The UCL would permit Clemens to offer additional evidence of consumer expectations, but he offers only evidence concerning his personal experience. His largely undefined personal assumptions and expectations do not support a finding that the 60,000-mile lifespan of the head gasket was material even to his own purchasing decision; he has not produced sufficient evidence that the failure to disclose was likely to deceive a reasonable consumer. Therefore, his claim of fraudulent conduct in violation of the UCL fails.

## B.  Unfair Conduct

**[13]** Clemens also argues that summary judgment was improper because DaimlerChrysler engaged in "unfair" conduct under UCL. *Daugherty* forecloses this claim. "[T]he failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." *Daugherty*, 144 Cal. App. 4th at 839.

## CONCLUSION

Clemens cannot proceed on his express warranty claim because he has not alleged that his Dodge Neon failed to perform as expressly warranted. His implied warranty claim fails because he is not in vertical privity with DaimlerChrysler as required by California law. Dismissal was therefore appropriate as to both claims under state law and the Magnuson-Moss Act.

Because Clemens had inquiry notice of fraud more than three years before the filing of this action, the statute of limitations bars his Civil Code fraud claim. Clemens cannot proceed under the UCL because California courts have made it clear that DaimlerChrysler's conduct was not unfair within the meaning of the statute and Clemens has produced insufficient evidence that the failure rate of the head gasket was material to a reasonable consumer. The judgment of the district court is therefore

**AFFIRMED.**